IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JAMES FREEMAN, :
:
    Plaintiff :
:
v. : CIVIL NO. 3:10-CV-2502
:
NORTHUMBERLAND COUNTY : (Judge Munley)
et al., :
:
    Defendants :

## MEMORANDUM

### Background

James Freeman ("Plaintiff"), an inmate presently confined at the State Correctional Institution, Cresson, Pennsylvania ("SCI-Cresson"), initiated this *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983. Service of the Complaint was previously ordered.

Defendants named in the Complaint include PrimeCare Medical, Inc. ("PrimeCare"), a corporate entity which provides medical services to the inmate population at the Northumberland County Prison, and three of its employees Vice President Francis J. Komykoski, Carolyn Hackenburg, L.P.N.; and Doctor Robert Hynick (collectively the "Medical Defendants"). The Medical Defendants have responded to the Complaint by filing a motion to dismiss (Doc. 25).[1] An opposing brief has been submitted and this motion is ripe for consideration.

---

[1] The Remaining Defendants named in this action have filed a separate motion to dismiss. (Doc. 28.)

1

According to the Complaint, Freeman has "been coming back and forth in and out of Northumberland County Prison since December of 2009." (Doc. 1, p. 2.) During those periodic terms of imprisonment, Plaintiff generally asserts that "doctors only come in one time a week," at certain times there was mo medical staff working on weekends, and he has "been denied treatment for serious medical needs." Id. at ¶ 1. Freeman states that during his first period of incarceration at the prison he suffered a groin strain around 11:00 p.m  Plaintiff claims that there was deliberate indifference to that injury because it was a weekend evening and no medical staff was on duty. While his Complaint admits that a correctional officer promptly gave him Advil for his injury, Plaintiff adds that he had to wait almost a week before being seen by a physician. Furthermore, Doctor Hynick allegedly "told me that he would not do anything for me because I [sic] was a state inmate and would not be there long."[2] Id..

Plaintiff next avers that he returned to the prison on August 8, 2010 and remained there until October, 2010. During this period, Freeman claims that he "broke out in a rash, bumps and boils on my chest and back." Id. at ¶ 4. Although Plaintiff indicates that he was exposed to prisoners with MRSA, he does not claim to have been diagnosed with MRSA. There is also no allegation that he required but was not adequately given treatment for his rash.

Freeman states that a correctional officer sprayed him with OC, a chemical agent, which caused his eyes and skin to burn and all the nurses told him that there was nothing they could do for his condition. The Complaint also points out that at the time of this incident there were no nurses on duty between the hours of 10:00 p.m. and 6:00 a.m.

---

[2] It appears that his alleged conduct took place during a two period of confinement in December, 2009. See id. at ¶ 2.

2

Plaintiff's next contention maintains that his shoulder "is messed up real bad" from being required to wear restraints during recreation and whenever he left his cell. Id. at ¶ 12.. Freeman acknowledges that he was prescribed pain medication (Naproxin) for his shoulder. However, he contends that the prison medical staff was deficient for not ordering either an x-ray or MRI testing. In addition, Plaintiff claims that he had to wait almost three (3) weeks before being seen by a doctor 'who only issued me Ibuprofen." Id. at ¶ 12. The Complaint further indicates that due to inadequate weekend staffing by PrimeCare, there was a delay in receiving initial treatment from Nurse Hackenburg.. Freeman concludes by noting that he was transferred to a state correctional facility approximately three weeks later. Id. ¶ 13. Plaintiff seeks nominal, compensatory and punitive damages, as well as declaratory and injunctive relief.

**Discussion**

The Medical Defendants argue that they are entitled to entry of dismissal on the grounds that: (1) the claims against Defendants Primecare and Komykoski are improperly premised on a theory of *respondeat superior*; (2) a viable claim of deliberate indifference to a serious medical need is not set forth in the Complaint; and (3) supplemental jurisdiction should be declined with respect to Plaintiff's pendent state law claims.

**Standard of Review**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007)(quoting Evancho v. Fisher,

3

423 F.3d 347, 350 (3d Cir. 2005)). A plaintiff must present facts that, if true, demonstrate a plausible right to relief. See Fed. R. Civ. P. 8(a)(stating that the complaint should include "a short and plain statement of the claim showing that the pleader is entitled to relief"); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). This requirement "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary elements of the plaintiff's cause of action. Id. at 556. A complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Iqbal, 129 S.Ct at 1949. Legal conclusions must be supported by factual allegations and the complaint must state a plausible claim for relief. See id. at 1950.

"Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, at 555. The reviewing court must determine whether the complaint "contain[s] either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." Id. at 562; see also Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008)(in order to survive a motion to dismiss, a plaintiff must allege in his complaint "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of a particular cause of action). Additionally, pro se pleadings are to be construed liberally, Haines v. Kerner, 404 U.S. 519, 520 (1972).

**Mootness**

Freeman's Complaint in part seeks an award of injunctive relief requesting that

4

Defendants discontinue their alleged unconstitutional practices, customs, and policies and correct any existing unconstitutional conditions at the Northumberland County Prison. (Doc. 1, p. 8.)

Federal courts can only resolve actual cases or controversies, U.S. Const., Art. III, § 2, and this limitation subsists "through all stages of federal judicial proceedings. . . ." Id. see also Steffel v. Thompson, 415 U.S. 452, 459 (1974) (the adjudicatory power of a federal court depends upon "the continuing existence of a live and acute controversy)" (emphasis in original). An actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." Id. at n.10 (citations omitted). "Past exposure to illegal conduct is insufficient to sustain a present case or controversy . . . if unaccompanied by continuing, present adverse effects." Rosenberg v. Meese, 622 F. Supp. 1451, 1462 (S.D.N.Y. 1985) (citing O'Shea v. Littleton, 414 U.S. 488, 495-96 (1974)); see also Gaeta v. Gerlinski, Civil No. 3:CV-02-465, slip op. at p. 2 (M.D. Pa. May 17, 2002) (Vanaskie, C.J.).

Furthermore, an inmate's claim for injunctive and declaratory relief fails to present a case or controversy once the inmate has been transferred. Wahl v. McIver, 773 F.2d 1169, 1173 (11th Cir. 1985) (citation omitted); see also Carter v. Thompson, 808 F. Supp. 1548, 1555 (M.D. Fla. 1992).

Plaintiff has not been confined at the Northumberland County Prison since the initiation of this action in December, 2010. There is no indication that Freeman will be returned to the Northumberland County Prison in the foreseeable future. Accordingly, Plaintiff's action to the extent that it seeks injunctive relief based upon actions which occurred during his prior confinement at the Northumberland County Prison is subject to dismissal on the basis of

mootness.

**Respondeat Superior**

The Medical Defendants' initial argument is twofold. First, it is asserted that since the only mention of Defendant Komykoski in the Complaint is his being listed as a Defendant, the Complaint does not satisfy the pleading requirements of § 1983 and is improperly attempting to establish liability against PrimeCare Vice President Komykoski solely based upon his supervisory capacity.

Second, with respect to Defendant PrimeCare, it is argued that there are no contentions contained in the Complaint concerning any policies and/or procedures of PrimeCare which violated Plaintiff's constitutional rights. (Doc. 26, p. 9.) Consequently, the Medical Defendants conclude that the Complaint is similarly attempting to establish liability against PrimeCare solely on a vicarious liability theory, i.e., that its employees were deliberately indifferent to his medical needs.

A plaintiff, in order to state an actionable civil rights claim, must plead two essential elements: (1) that the conduct complained of was committed by a person acting under color of law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. Groman v. Township of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995); Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1141-42 (3d Cir. 1990).

Civil rights claims brought cannot be premised on a theory of *respondeat superior*. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or

occurrences which underlie a claim. See Rizzo v. Goode, 423 U.S. 362 (1976); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976). As explained in Rode:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

Rode, 845 F.2d at 1207.

This Court agrees that with the exception of being named as a Defendant there is no mention of Komykoski in the Complaint. Since Defendant Komykoski is is identified as being a PrimeCare vice president, it is apparent that Plaintiff is seeking to establish liability against said Defendant solely due to his supervisory position.

It is equally apparent that Freeman is attempting to establish liability against PrimeCare solely on the basis that it employs Nurse Hackenburg and Doctor Hynick as well as other members of the Northumberland County Prison medical staff. It is noted that Plaintiff's claim that there was no medical staffing on weekends is clearly undermined by his contrary acknowledgment that Nurse Hackenburg worked on Saturday and Sunday. (Doc. 1, ¶ 13.) Moreover, there is no discernible claim by Plaintiff that PrimeCare implemented any policy, custom, or procedure which would preclude medical attention from being provided to prisoners on weekends or that treatment by a physician was limited to the regularly scheduled one day a week that Doctor Hynick would visit the prison.

Thus, under an application of the standards developed in Capone, Plaintiff's assertions are insufficient for purposes of establishing liability under § 1983 with respect to PrimeCare. See Natale v. Camden County Correctional Facility, 318 F . 3d 575, 582 (3d Cir. 2003)(a corporate medical provider can only be liable for a prisoner's constitutional violation, if the

violation was caused by a corporate policy or custom).

In conclusion, since there are no allegations that Komykoski or PrimeCare enacted any policy, custom, or procedure which prevented timely delivery of medical services to Freeman or otherwise caused him to receive inadequate care, under the standards announced in Natale and Rode Defendants Komykoski and PrimeCare are entitled to an entry of dismissal.

**Deliberate Indifference**

The Medical Defendants next argue that a viable claim of deliberate indifference is not set forth in Freeman's Complaint. First, they contend that Plaintiff has not adequately alleged that he suffered from a serious medical need. (Doc. 26, p. 5.) Second, they assert that the Complaint does not allege any deliberate indifference because it acknowledges that Plaintiff was "at all times, provided with medical treatment for ailments he did complain of, and that he merely disagrees with the medical treatment he was provided." Id. at p. 6.

The Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999) (citing Estelle v. Gamble, 429 U.S. 97 (1976)). In order to establish an Eighth Amendment medical claim, an inmate must allege acts or omissions by prison officials sufficiently harmful to evidence deliberate indifference to a serious medical need. See Spruill v. Gillis, 372 F.3d 218, 235 - 36 (3d Cir. 2004); Natale v. Camden Cty. Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003). In the context of medical care, the relevant inquiry is whether the defendant was: (1) deliberately indifferent (the subjective component) to (2) the plaintiff's serious medical needs (the objective component). Monmouth Cty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987); West v. Keve, 571 F.2d 158, 161 (3d Cir. 1979).

A serious medical need is "one that has been diagnosed by a physician as requiring

treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Mines v. Levi, 2009 WL 839011 *7 (E.D. Pa. March 26, 2009)(quoting Colburn, 946 F.2d at 1023); Monmouth Cty. Corr. Inst. Inmates, 834 F.2d at 347. "[I]f unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the Eighth Amendment." Young v. Kazmerski, 266 Fed. Appx. 191, 193 (3d Cir. 2008)(quoting Monmouth Cty. Corr. Inst. Inmates, 834 F.2d at 347).

As discussed earlier, the Complaint references four unrelated injuries: a groin sprain, burning caused by being sprayed with a Mace like substance, a rash, and a "messed up" shoulder. (Doc. 1, ¶ 12.) There is no indication in the Complaint that any of those injuries seriously impacted Plaintiff's health or were of a prolonged duration. Freeman also makes no contention that his purported injuries required any medical attention after he left the Northumberland County Prison or that they did not heal in a timely manner.

A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that a layperson would recognize the need for a doctor's attention. Monmouth Cty. Corr. Inst. Inmates, 834 F.2d at 347. It is particularly noted that while this Court agrees that being sprayed with a mace-type chemical agent caused Freeman temporary pain and discomfort. However, the use of mace-type sprays by correctional officials has been found to be constitutionally acceptable. See Banks v. Mozingo, 423 Fed. Appx. 123, 126 (3d Cir. 2011); Travillion v. Leon, 248 Fed. Appx. 3563 (3d Cir. 2007). In light of Plaintiff's failure to allege any facts which could establish that he suffered anything more then temporary discomfort from the employment of the chemical spray, it does not appear that a serious medical need has been implicated. See Borelli v. Askey, 582 F.Supp. 512, 513 (E.D. Pa.

9

1984) (slight visual impairment causing mild headaches and mild tension is not a serious medical need).

Second, while Plaintiff indicates that he broke out in a rash, bumps and boils, he sets forth no facts as to the length or magnitude of his rash. There is clearly no factual assertion that Freeman was ever diagnosed with MRSA. The Complaint also does not contend that the rash persisted beyond a short duration, had any continuing negative impact on his health, or even required any subsequent treatment. Based upon Plaintiff's vague assertions, he has not adequately set forth facts which could support a determination that his rash constituted a serious medical need..

Next, with respect to Plaintiff's vague assertions of having a messed up shoulder from having to wear restraints and a groin sprain it also cannot be determined that either of those injuries constituted an objectively serious medical need. Once again, Plaintiff offers no facts to show that either condition persisted beyond a short duration, had more than a brief negative impact on his daily life, or required any subsequent medical care of any type.

Based upon the above considerations, this Court agrees with the Medical Defendants' contention that Plaintiff alleges only that he "suffered from a variety of minor injuries" and there is no allegation "that they resulted in a serious medical need." ( Doc. 26, p. 5.) Even affording liberal construction to the *pro se* Complaint, it cannot be established that the four injuries identified by Plaintiff were anything more than minor, temporary ailments. See generally Stankowski v. Farley, 251 Fed. Appx. 743, 748 (3d Cir. 2007)(minor injuries do not satisfy serious medical need). Simply put, the general allegations set forth in the Complaint do not establish that Plaintiff had any serious medical need as contemplated under Estelle.

Regardless of this Court's concern that the serious medical need requirement has not been

satisfied by the sketchy allegations raised in the Complaint, it is nonetheless apparent that Freeman has failed to satisfy the second prong of the deliberate indifference analysis.

The Supreme Court has established that the proper analysis for deliberate indifference is whether a prison official "acted or failed to act despite his knowledge of a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 841 (1994). A complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment [as] medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106. When a prisoner has actually been provided with medical treatment, one cannot always conclude that, if such treatment was inadequate, it was no more than mere negligence. See Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993). It is true, however, that if inadequate treatment results simply from an error in medical judgment, there is no constitutional violation. See id. However, where a failure or delay in providing prescribed treatment is deliberate and motivated by non-medical factors, a constitutional claim may be presented. See id.; Ordonez v. Yost, 289 Fed. Appx. 553, 555 (3d Cir. 2008)("deliberate indifference is proven if necessary medical treatment is delayed for non-medical reasons.")

With respect to Plaintiff's alleged injury from being sprayed with a mace like substance, the inmate acknowledges that he was examined by prison nurses after the incident and was told that there was nothing more that could be done. (Doc. 1, ¶ 14.) Freeman makes no factual contention that there was any medical treatment which would have relieved the temporary burning associated with the use of the spray which was not provided to him for a non-medical reason. Since Freeman acknowledges being provided with an examination by prison nurses after being sprayed and does not present any facts which would show that he was denied any necessary

11

treatment, a viable deliberate indifference claim has not been established.

Plaintiff next maintains that he suffered a groin strain. He asserts that because this injury occurred at 11:00 p.m. on a weekend evening medical attention was unavailable because there was no medical staff on duty. However, Freeman admits that a correctional officer gave him Advil, he was seen by medical staff the following Monday, and Doctor Hynick examined him approximately one week later. While Plaintiff asserts that Doctor Hynick refused to "do anything ... because I was a state inmate who would not be there long" there is no assertion as to what if any treatment was required. (Doc. 1, ¶ 1.) As previously noted, there are no factual allegations set forth by Freeman as to the duration or severity of his injury. He does not contend that his injury was aggravated due to any failure or delay in being given treatment. Rather, there is no claim that any treatment was ever warranted, prescribed, or recommended. The Complaint also does not contend that Plaintiff's sprain required any care whatsoever following his return to state prison. The failure of Freeman to allege that his injury required any type of treatment which was not provided undermines his bald assertion that he was a victim of deliberate indifference.

Freeman also seeks relief with respect to a rash, bumps, and boils that he allegedly developed on or about August of 2010. There is no claim be Plaintiff that he requested but was denied medical attention for his rash. His Complaint also does not include an allegation that any care was prescribed but not provided or delayed for a non-medical reason. Rather, Freeman alleges only that there "was no proper medical treatment." (Doc. 1, ¶ 4.) This clearly vague assertion is simply insufficient to set forth a claim under <u>Estelle</u> that any of the Medical Defendants were deliberately indifferent to his rash.

In regards to Plaintiff's alleged messed up shoulder, Plaintiff admits that he was provided Naproxin for pain and was subsequently seen by a doctor who ordered Ibuprofen. The prisoner

12

generally asserts only that an x-ray and MRI testing should have been ordered. However, there is no evidence suggesting that any such testing would have been appropriate. Under the well established Estelle and Durmer principles, it is clear that the contentions regarding a doctor's determination not to order testing sound in negligence, not deliberate indifference. See Davidson v. Cannon, 474 U.S. 344, 347-48 (1986)(medical negligence does not expose a defendant to liability under § 1983). Simply put, "[a]llegations of negligent treatment are medical malpractice claims, and do not trigger constitutional protections." Whooten v. Bussanich, No. 07-1441, slip op. at 4 (3d Cir. Sept. 12, 2007)(citation omitted). The Complaint fails to set forth any factual assertions which could support a claim that Freeman had any injury or condition that was not treated or ignored. Finally there are no facts alleged which could support a claim that Freeman had any injury or condition which was aggravated due to a delay in being provided with medical attention. Thus, entry of dismissal in favor of the Medical Defendants is appropriate.[3]

**Pendent Jurisdiction**

The Medical Defendants' remaining argument asks that this Court decline supplemental jurisdiction over Plaintiff's pendent state law tort claims. (Doc. 26, p. 12.) Plaintiff counters that he is asking this Court to take supplemental jurisdiction over his state law claims. (Doc. 36, p. 5.)

With respect to Plaintiff's pendent state law claims, federal courts have jurisdiction over state claims which are related to the federal claims and result from a common nucleus of

---

[3] This determination is further supported by Plaintiff's apparent contention that despite the shoulder pain and restraints he was still able to engage in a recreational work out. (Doc. 1, ¶ 13.) Moreover, as previously discussed there is no indication whatsoever that Plaintiff's alleged shoulder condition continued to have an adverse effect on him or required any type of care following his departure form the Northumberland County Prison.

Case 3:10-cv-02502-JMM-JVW   Document 48   Filed 03/05/12   Page 14 of 17

operative facts. See United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966); see also Aldinger v. Howard, 427 U.S. 1, 9 (1976). A district court may decline to exercise supplemental jurisdiction over a claim when the court has dismissed all claims over which it has original jurisdiction. See 28 U.S.C. § 1367(c)(3) (1997). Decisions regarding pendent jurisdiction should be premised on considerations of judicial economy, convenience and fairness to the litigants. New Rock Asset Partners v. Preferred Entity Advancements, 101 F.3d 1492, 1505 (3d Cir. 1996)(citation omitted).

Once jurisdiction has been exercised over the state claim, elimination of the federal claim does not deprive the court of jurisdiction to adjudicate the pendent claim. Id. (citing Lentino v. Fringe Emp. Plans, Inc., 611 F. 2d 474, 479 (3d Cir. 1979)). However, when the federal claim is dismissed prior to trial, a district court should decline to decide the pendent state claims, "unless considerations of judicial economy, convenience, and fairness provide an affirmative justification for doing so." Borough of West Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995). As discussed, Plaintiff's federal claims against the Medical Defendants will not be permitted to proceed. Accordingly, to the extent that the Complaint may be construed as asserting pendent state law claims against the Medical Defendants, jurisdiction will be declined with respect to said claims.

## Conclusion

Plaintiff's action to the extent that it seeks injunctive relief based upon actions which occurred during his prior confinement at the Northumberland County Prison is dismissed as moot. Second, the claims against Medical Defendants PrimeCare and its Vice President Komykoski are subject to dismissal as they are improperly premised on a theory of *respondeat superior*. Third, the vague allegations set forth in the Complaint fails to set forth a viable claim of deliberate

indifference to a serious medical need.

Finally, supplemental jurisdiction will be declined with respect to the Plaintiff's pendent state law tort claims against the Medical Defendants. The claims against remaining Defendants, Northumberland County, County Commissioners Frank Sawicki, Vinny Clausi, and Kurt Masser, Controller Charles Erdman, Sheriff Chad Reiner, Warden Roy Johnson, Deputy Warden Wheary, Officers Heater and Bordner, Lieutenant Keith Smink and Lieutenant Jim Smink, District Attorney Anthony Rosini, and Judge Robert Sacavage will proceed. An appropriate Order will enter.

BY THE COURT:

s/James M. Munley
JUDGE JAMES M. MUNLEY
United States District Court

DATED: MARCH 5 , 2011

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JAMES FREEMAN,** : | |
| : | |
| **Plaintiff** : | |
| : | |
| v. : | **CIVIL NO. 3:10-CV-2502** |
| : | |
| **NORTHUMBERLAND COUNTY,** : | **(Judge Munley)** |
| et al., : | |
| **Defendants** : | |

## ORDER

**AND NOW**, to wit, this 5th day of March 2012, for the reasons set forth in the foregoing Memorandum, it is hereby **ORDERED** that:

1. The Medical Defendants' motion to dismiss (Doc. 25) is **GRANTED**.

2. Dismissal will be entered in favor of Medical Defendants, PrimeCare, Francis J. Komykoski, Carolyn Hackenburg, L.P.N., and Doctor Robert Hynick.

3. Jurisdiction will be **DECLINED** with respect to any state law claims against the Medical Defendants.

4. The claims against the remaining Defendants, Northumberland County,

County Commissioners Frank Sawicki, Vinny Clausi, and Kurt Masser, Controller Charles Erdman, Sheriff Chad Reiner; Warden Roy Johnson, Deputy Warden Wheary, Officers Heater and Bordner, Lieutenant Keith Smink, Lieutenant Jim Smink, District Attorney Anthony Rosini, and Judge Robert Sacavage will proceed.

                                    **BY THE COURT:**

                                  **s/James M. Munley**
                                  **JUDGE JAMES M. MUNLEY**
                                  **United States District Court**