# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JAMES FREEMAN,                       :
                                     :
       **Plaintiff**                :
                                     :
    **v.**                          :   **CIVIL NO. 3:10-CV-2502**
                                     :
NORTHUMBERLAND COUNTY                 :   **(Judge Munley)**
 et al.,                            :
                                     :
      **Defendants**             :

## MEMORANDUM

**Background**

This *pro se* civil rights action pursuant to 42 U.S.C. § 1983 was filed by James Freeman ("Plaintiff"), an inmate presently confined at the Mahanoy State Correctional Institution, Frackville, Pennsylvania.   By Memorandum and Order dated March 5, 2012,  a motion to dismiss (Doc. 25) filed by Defendants  PrimeCare Medical, Inc. ("PrimeCare"), and three of its employees Vice President Francis J. Komykoski; Carolyn Hackenburg, L.P.N.; and Doctor Robert Hynick was granted.

This action centers on Plaintiff's prior multiple confinements in the Northumberland County Prison.  Remaining Defendants include Northumberland County, and the following members of the county Prison Board, County Commissioners Frank Sawicki, Vinny Clausi, and Kurt Massner; District Attorney Anthony Rosini; Controller Charles Erdman; Judge Robert Sacavage; and Sheriff Chad Reiner.  Freeman is also proceeding against the following

1

Northumberland County Prison employees: Warden Roy Johnson; Deputy Warden Wheary;

Correctional Officers Heater and Bordner; as well as Lieutenants Keith Smink and J. Smink..

According to his Complaint, Plaintiff has been periodically confined in the

Northumberland County Prison since 2009.   Many of Freeman's claims concern the medical care

which was provided to him during those periods.  Freeman states that his first period of

incarceration at the prison occurred in December, 2009 and lasted for two weeks.   Plaintiff

claims that during that period he was housed in a dirty, insect infested, "extremely cold"

segregation cell, the walls of which had holes, orange mold, and asbestos with no window or  hot

water.  (Doc. 1, ¶ 2.)  Freeman next asserts that he was placed in segregation without being

afforded a hearing.   In addition, he was purportedly given only one set of clothes, denied

adequate medical care for a groin injury which he suffered on a weekend evening when no

medical staff was on duty.[1]   The Complaint further claims that Freeman  was forced to wear

restraints during recreation time, given a dirty, ripped mattress, and  was denied commissary,

telephone, and law library privileges.

During June and July, 2010, Plaintiff was returned to the Northumberland County Prison

for approximately four (4)  weeks.  He was purportedly subjected to the same conditions outlined

above with the exception that this time "it was extremely hot" in the prison due to a lack of  air

conditioning.  (Id. at ¶. 3)

Plaintiff was sent back to the prison for a third time on August 8, 2010 and remained

there until October, 2010.  Freeman again claims that he was housed in unsanitary cell during this

period.  As a result of those purported deficiencies,  he "broke out in a rash, bumps and boils on

---

[1] Plaintiff admits that a correctional officer promptly gave him Advil for his injury,

my chest and back" and was exposed to prisoners with MRSA. (Id. at ¶ 4.)  After he and another prisoner went on a hunger strike to protest the conditions in the prison, Plaintiff contends that he was subjected to retaliation by Deputy Warden Wheary.  This alleged retaliation consisted of loss of commissary privileges.

On September 16, 2010, Plaintiff states that he was issued a falsified misconduct charge (assaulting and interfering with a staff member)  by CO Bordner.  However, the Complaint acknowledges that Plaintiff "beat" both of those charges.  (Id. at ¶ 6.)  A second false misconduct charge (threatening a staff member) was filed against Freeman on September 22, 2010 by CO Heater.  Plaintiff indicates that he was found guilty of that charge by Deputy Warden Wheary. However, Plaintiff again asserts that "I beat that misconduct charge also."  (Id. at ¶ 7.)[2]

Plaintiff next alleges that on September 23, 2010 Lieutenant Keith Smink  sprayed him with OC, a chemical agent "for no reason." (Id. at ¶ 9.)  Plaintiff explains that on said date he refused an order to be handcuffed and moved to another cell  because the cell adjacent to the cell where he was to be transferred to housed Inmate Duffy, a prisoner with whom he previously argued with.  The Complaint adds that Defendant Smink sprayed him with two shots of OC, a mace like substance which caused his eyes and skin to burn.  Plaintiff adds that he was also issued a misconduct for this incident and was sanction by Wheary to serve a 120 day term of

---

[2] Since Plaintiff acknowledges that he was exonerated on both charges there is no basis for civil rights liability.  See Booth v. Pensce, 354 F. Supp.2d 553, 558-59 (E.D. Pa. 2005)(an alleged false misconduct charge does not by itself qualify a s a violation of the Eighth Amendment).  Due process is satisfied when an inmate is afforded to be heard and to defend against an allegedly falsified or baseless misconduct charge.  See Smith v. Mensinger, 293 F.3d 641, 653-54 (3d Cir. 2002).

disciplinary confinement.[3]

After Plaintiff was removed from his cell, he was placed in segregation for a five (5) day period where he was placed on a food loaf diet, denied clothing, clean towels, bedding, showers, recreation, personal legal property , legal and regular mail, as well as being forced to sleep on a concrete slab with 24 hour illumination.  (See id. at ¶ 8.)

The final claims asserted are that Plaintiff's outgoing regular and legal mail was read by prison officials, the prison is understaffed, infested with bird droppings,  lacks fire protective measures such as sprinklers, fails to provide dental treatment and has an inadequate law library. (See id. at ¶ 16.)  Plaintiff seeks nominal, compensatory and punitive damages, as well as declaratory and injunctive relief.[4]

## Discussion

Remaining Defendants argue that they are entitled to entry of dismissal on the grounds that: (1) there are no alleged facts which could support a finding of municipal liability; (2)  the claims against the County and Prison Board are improperly premised on a theory of *respondeat superior*; (3) the purported allegations of inhumane conditions did not violate the Eighth Amendment; and (4) Plaintiff's contentions relating to mail tampering are constitutionally insufficient.

---

[3]  Freeman claims that he was not timely served with a copy of the misconduct and that Defedant Wheary was a biased hearing examiner.

[4]  This Court's March 5, 2012 Memorandum and order concluded that  Plaintiff's action to the extent that it seeks injunctive relief based upon actions which occurred during his prior confinements at the Northumberland County Prison was subject to dismissal on the basis of mootness.

**Standard of Review**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of complaints that fail

to state a claim upon which relief can be granted.  When ruling on a motion to dismiss under

Rule 12(b)(6), the court must "accept as true all factual allegations in the complaint and all

reasonable inferences that can be drawn therefrom, and view them in the light most favorable to

the plaintiff." Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007)(quoting Evancho v. Fisher,

423 F.3d 347, 350 (3d Cir. 2005)).  A plaintiff must present facts that, if true, demonstrate a

plausible right to relief.  See Fed. R. Civ. P. 8(a)(stating that the complaint should include "a

short and plain statement of the claim showing that the pleader is entitled to relief"); Bell Atl.

Corp. v. Twombly, 550 U.S. 544, 555 (2007).  This requirement "calls for enough facts to raise a

reasonable expectation that discovery will reveal evidence of" the necessary elements of the

plaintiff's cause of action.  Id. at 556.  A complaint must  contain "more than an unadorned, the-

defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, ___ U.S. ____ , 129 S.Ct 1937,

1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements do not suffice." Iqbal, 129 S.Ct at 1949.  Legal conclusions must be

supported by factual allegations and the complaint must state a plausible claim for relief.  See id.

at 1950.

"Factual allegations must be enough to raise a right to relief above the speculative level,

on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."

Twombly, at 555.  The reviewing court must determine whether the complaint "contain[s] either

direct or inferential allegations respecting all the material elements necessary to sustain recovery

under some viable legal theory." Id. at 562; see also Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008)(in order to survive a motion to dismiss, a plaintiff must allege in his complaint "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of a particular cause of action). Additionally, pro se pleadings are to be construed liberally, Haines v. Kerner, 404 U.S. 519, 520 (1972).

**Municipal Liability**

Remaining Defendants initially contend that the claims against Northumberland County and the members of the County Prison Board (i.e., Commissioners Sawiciki, Clausi, Masser, D.A. Rossini, Controller Erdman, Sheriff Reiner and Judge Sacavage) are meritless because they cannot be liable under a theory of *respondeat superior* and Plaintiff does not assert that his constitutional rights were violated as the result of a Northumberland County Prison policy, custom, or practice as contemplated under Monell v. Department of Social Servs., 436 U.S. 658, 690-91 (1978). See Doc. 33, p. 17.

Plaintiff's opposing brief counters that the alleged unconstitutional conditions of his confinement were made known to the members of the Prison Board as evidenced by the filing of a 2008 federal class action suit in this district, Collins v. Reish Civil No. 4:08-CV-345(Jones, J.) Freeman indicates that despite being given notice of the inadequate conditions existing in jail the Prison Board allowed those deficiencies to continue during the 2009-2010 time frame when he confined in Northumberland County. See Doc. 36.

A plaintiff, in order to state an actionable civil rights claim, must plead two essential elements:  (1) that the conduct complained of was committed by a person acting under color of

law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. Groman v. Township of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995); Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1141-42 (3d Cir. 1990).

Civil rights claims brought cannot be premised on a theory of *respondeat superior*. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim. See Rizzo v. Goode, 423 U.S. 362 (1976); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976). As explained in Rode:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

Rode, 845 F.2d at 1207.

A municipal body or other local governmental unit, not part of a state for Eleventh Amendment purposes, may be a "person" subject to suit under 42 U.S.C. § 1983. Monell, 436 U.S. at 690-91("Congress did intend municipalities and other local government units to be included among those persons to whom § 1983 applies.") "Local governing bodies, like every other § 1983 'person,' by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." Id. See also Board of County Comm'rs of Bryan County, OK v. Brown, 520 U.S. 398, 403-07 (1997); Roman v. Jeffes, 904 F.2d 192, 196-97 (3d Cir. 1990); Illiano v. Clay Township, 892 F. Supp. 117, 121 (E.D. Pa. 1995).

However, it has been repeatedly held that a local government unit may not be subjected to

7

§ 1983 liability on a theory of *respondeat superior*. Bryan County, 520 U.S. at 403; City of Canton v. Harris, 489 U.S. 378, 392 (1989); Pembaur v. Cincinnati, 475 U.S. 469, 478-79 (1986); Monell, 436 U.S. at 691; Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996); Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990). Rather, "... a plaintiff seeking to impose liability on a municipality under § 1983 [is required] to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." Bryan County, 520 U.S. at 403; Beck, 89 F.3d at 971. In Bryan County, the United States Supreme Court elaborated on the showing required for municipal liability under § 1983, stating:

> ... [I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

Id. at 404; see Kneipp v. Tedder, 95 F.3d 1199, 1213 (3d Cir. 1996).

The United States Court of Appeals for the Third Circuit has held that a municipality can be held liable under § 1983 "only when 'execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'" Andrews, 895 F.2d at 1480 (citing Monell, 436 U.S. at 694).

With respect to Northumberland County and its Prison Board members, Remaining Defendants argue that Plaintiff's general allegations about the conditions of the prison "have not been supported by even the semblance of a factual predicate that these conditions existed on a systematic basis." Doc. 33, p. 18. They add that this is not a case where"[l]iability is founded when a practice becomes so wide spread as to infer official knowledge and adoption of the violation." Id. at 17-18.

8

Plaintiff opposes this argument by noting that a 2008 counseled class action, <u>Collins v. Reish</u> Civil No. 4:08-CV-345 (Jones, J.) , which was initiated on behalf of the Northumberland County Prison inmate population included claims similar to the conditions of confinement allegations set forth in the pending Complaint (of course, Plaintiff's action regards conditions which existed as of 2009, after the filing, but prior to settlement of the aforementioned class action suit).   The Prison Board members listed as Defendants in this matter were also named as defendants in the class action.

As noted by the Remaining Defendants' supporting brief, custom can be established by proof of knowledge and acquiescence.  <u>Fletcher v. O'Donnell</u>, 867 F. 2d 791, 793-4 (3d Cir. 1989).  In light of the liberal standards applied to *pro se* submissions, an application of the <u>Iqbal</u> and <u>Twombly</u> criteria to the parties' respective arguments and the allegations set forth in the Complaint, it is apparent to this Court that Plaintiff has, at least at this juncture of the proceedings, sufficiently alleged personal involvement by the Remaining Defendants with respect to his alleged inadequate conditions of confinement claims.

## Access to the Courts

Remaining Defendants next maintain that Plaintiff has failed to set forth a viable claim of denial of his right of access to the court because he has not alleged any injury.  <u>See</u> Doc. 33, p. 27.  As previously discussed, Plaintiff alleges that prison officials denied him access to the prison law library as well as to his personal legal materials, and improperly monitored his legal mail.  It is also alleged that the prison law library was inadequate.

Inmates have a constitutional right of meaningful access to law libraries, legal materials or legal services.  <u>Bounds v. Smith</u>, 430 U.S. 817, 821-25 (1977).  The United States Supreme Court in <u>Lewis v. Casey</u>, 518 U.S. 343, 351-54 (1996), clarified that an inmate plaintiff, in order

to set forth a viable claim under Bounds, must demonstrate that a non-frivolous legal claim being pursued in the courts had been frustrated or was being impeded. A plaintiff must also allege an actual injury to his litigation efforts.

Based upon a review of the Complaint, Plaintiff raises no contention that his pursuit of a non-frivolous legal claim was frustrated or impeded due to any conduct attributed to any of the Remaining Defendants. Accordingly, under the standards announced in Lewis, the Complaint to the extent that it is seeking to assert a denial of access to the courts claim is subject to dismissal.

**Disciplinary Confinement**

It is next argued that Plaintiff's claims that he was placed in segregated housing on multiple occasions without being afforded a hearing are constitutionally insufficient.

The Fourteenth Amendment prohibits the states from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. In order to determine whether a due process violation has occurred, an initial determination must be made that a protected liberty interest exists and, if so, the next step is to define what process is mandated to protect it. See Sandin v. Conner, 515 U.S. 472, 484 (1995). A protected liberty interest may be created by either the Due Process Clause itself or by state law. Id. Due process requirements apply only when the prison officials' actions impose "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484. Conversely, there can be no due process violation where there is no protected liberty interest.

The United States Supreme Court in Sandin, shifted the focus of liberty interest analysis from one "based on the language of a particular regulation" to "the nature of the deprivation" experienced by the prisoner. Id. at 481. In Sandin, the Supreme Court reasoned, *inter alia*, that "[d]iscipline by prison officials in response to a wide range of misconduct" is expected as part of

an inmate's sentence. Id. at 485.  Courts within this circuit, applying Sandin in various actions, have found no merit in due process claims presented regarding short term institutional disciplinary custody placement.  See Torres v. Fauver, 292 F.3d 141, 150-51 (3d Cir. 2002)(placement in segregation as a disciplinary sanction did not implicate a protected liberty interest); Griffin v. Vaughn, 112 F.3d 703, 706-08  (3d Cir. 1997)(no liberty interest in avoiding fifteen (15) month placement in administrative custody because said confinement was not atypical); Smith v. Mensinger, 293 F.3d 641, 645, 654 (3d Cir. 2002)(seven (7) months of disciplinary confinement did not implicate liberty interest).

Considering the rules of law set forth in Sandin and the subsequent line of decisions by the Third Circuit Court of Appeals, this Court finds that Plaintiff's action to the extent that it alleges that he was improperly placed in segregation without being afforded a hearing during his temporary transfers to the Northumberland County Prison is meritless because the magnitude of his admittedly brief placements in segregation  did not implicate a protected liberty interest.

**Conditions of Confinement**

Plaintiff claims that he was housed in a dirty, insect infested, "extremely cold" segregation cell, the walls of which had holes, orange mold, and asbestos with no window or  hot water. (Doc. 1, ¶ 2.)  In addition, he was purportedly given only one set of clothes, forced to wear restraints during recreation time, given a dirty, ripped mattress, and  was denied commissary, and telephone privileges.[5]  Freeman further contends that he was denied commissary, exposed to MRSA, and his cell was extremely hot during the summer months.

Remaining Defendants asserts that the "temporary conditions to which Freeman was

---

[5]  Plaintiff's claims relating to law library access and medical treatment have been discussed separately.

exposed were not sufficiently serious to rise to the level of a constitutional violation." (Doc. 33, p. 23.) Plaintiff counters that the "nasty extremities" of his confinement at the Northumberland County Prison were of such magnitude that they precipitated a MRSA outbreak. (Doc. 36, p. 3.)

The Eighth Amendment's prohibition of cruel and unusual punishment imposes duties on prison officials to provide prisoners with the basic necessities of life, such as food, clothing, shelter, sanitation, medical care and personal safety. See Farmer v. Brennan, 511 U.S. 825, 832 (1994); Helling v. McKinney, 509 U.S. 25, 31 (1993). Prison conditions may amount to cruel and unusual punishment if they cause "unquestioned and serious deprivations of basic human needs . . . [that] deprive inmates of the minimal civilized measure of life's necessities." Tillman v. Lebanon Cnty. Corr. Fac., 221 F.3d 410, 418 (3d Cir. 2000).

In reviewing conditions of confinement claims, courts have stressed that the duration of the complainant's exposure to the alleged unconstitutional conditions and the "totality of the circumstances" are critical to a finding of cruel and inhumane treatment. Hinterlong v. Hill, 2006 WL 2303106 * 5-6 (E.D. Pa. August 8, 2006); Nami v. Fauver, 82 F.3d 63, 67 (3d Cir. 1996). Moreover, the focus must be on the deprivation of a particular basic necessity. As explained in Wilson v. Seiter:

> Some conditions of confinement may establish an Eighth Amendment violation "in combination" when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise – for example, a low cell temperature at night combined with a failure to issue blankets. To say that some prison conditions may interact in this fashion is a far cry from saying that all prison conditions are a seamless web for Eighth Amendment purposes. Nothing so amorphous as "overall conditions" can rise to the level of cruel and usual punishment when no specific deprivation of a single human need exists.

501 U.S. 294, 304-05 (1991).

12

In addition to showing conditions that pose a risk of serious harm, the inmate must show that the prison official responsible for the conditions of confinement acted with "a sufficiently culpable state of mind." Id. at 298.  A prison official violates the Eighth Amendment when he acts with deliberate indifference to a known, objectively serious risk to a prisoner's health or safety. See Farmer, 511 U.S. at 837; Beers-Capitol v. Whetzel, 256 F.3d 120, 125 (3d Cir. 2001). This requirement of actual knowledge means that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

The mere fact that other inmates were also subjected to the same deprivations as Plaintiff by itself does not warrant a conclusion that the conditions alleged were constitutionally acceptable.  More importantly, given the totality and duration of Plaintiff's assertions, including his claims of being intentionally deprived of basic necessities, exposure to excessive heat and cold temperature,  and housed in unsanitary conditions which were of such magnitude as to precipitate a MRSA outbreak, the Court is satisfied that Freeman's Complaint has set forth a claim for alleged violations of his Eighth Amendment rights sufficient to withstand scrutiny under Rule 12(b)(6). The motion to dismiss will therefore be denied with regard to Plaintiff's allegations that Remaining Defendants intentionally subjected him to unconstitutional conditions of confinement.

**Mail**

The final argument raised by the Remaining Defendants is that Plaintiff's allegations relating to tampering of both his incoming and outgoing mail fails to state a constitutional violation.  See Doc. 33, p. 27.

It is well-settled that interference with inmate non-legal mail may amount to a denial of

13

free speech under the First and Fourteenth Amendments. <u>Taylor v. Oney</u>, 196 Fed. Appx. 126, 128 (3d Cir. 2006)( the opening of incoming legal mail outside of a prisoner's presence impinges upon the inmate's First Amendment rights.) The Court of Appeals for the Third Circuit in <u>Hamm v. Rendell</u>, 166 Fed. Appx. 599, 603 (3d Cir. 2006), stated that when district courts address claims of improper mail inspections and intrusive mail regulations or any actions involving outgoing inmate mail, the test developed by the Supreme Court in <u>Procunier v. Martinez</u>, 416 U.S. 396, 412 (1974), should be employed. Specifically, courts should inquire as to whether the prison restriction or conduct relating to outgoing inmate mail furthered an important or substantial government interest unrelated to the suppression of expression, and whether the conduct was intrusive only to the degree necessary to protect that interest. <u>Id</u>.; <u>see also</u>, <u>Nasir v. Morgan</u>, 350 F.3d 366, 371-74 (3d Cir. 2003)(<u>Procunier</u> should be applied to outgoing prisoner correspondence issues).

In <u>Jones v. Brown</u>, 461 F.3d 353, 359 (3d Cir. 2006), the Third Circuit Court of Appeals reiterated that prisoners have a First  Amendment right with respect to their legal mail and that "a state pattern and practice, or . . . explicit policy of opening legal mail outside the presence of the addressee inmate interferes with protected communications . . . and accordingly impinges upon the inmate's right to freedom of speech." The Court added that a prisoner litigant pursuing such a claim is not required to allege actual injury. <u>See</u> <u>id</u>.

Remaining Defendants' pending argument solely addresses Plaintiff 's mail tampering claims in the context of his right of access to the courts. The argument is silent with respect to the issue of whether a claim based upon a denial of the prisoner's right to freedom of speech has been set forth. Based upon an application of the above described standards to Plaintiff's pending allegations, the Complaint has set forth sufficient claims of mail tampering to withstand Rule

12(b)(6) analysis.

## Conclusion

Plaintiff's action to the extent that it seeks injunctive relief based upon actions which occurred during his prior confinement at the Northumberland County Prison is dismissed as moot. Plaintiff's claims of being denied access to the courts and due process with respect to his segregated confinement placements are dismissed for failure to state a claim.

The claims against Remaining Defendants Northumberland County; County Commissioners Frank Sawicki, Vinny Clausi, and Kurt Masser; Controller Charles Erdman; Sheriff Chad Reiner; Warden Roy Johnson; Deputy Warden Wheary; Officers Heater and Bordner; Lieutenants Keith Smink and Lieutenant Jim Smink; District Attorney Anthony Rosini; and Judge Robert Sacavage subjected Plaintiff to unconstitutional conditions of confinement and mail tampering will proceed.

An appropriate Order will enter.

BY THE COURT:

s/James M. Munley_
**JUDGE JAMES M. MUNLEY**
**United States District Court**

**DATED: MARCH 20 , 2011**

15

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JAMES FREEMAN,                          :
                                        :
      **Plaintiff**                  :
                                        :
     **v.**                         :   **CIVIL NO. 3:10-CV-2502**
                                        :
NORTHUMBERLAND COUNTY,                  :   **(Judge Munley)**
et al.,                                 :
     **Defendants**                 :

## ORDER

    **AND NOW**, to wit, this 20th day of  March  2012, for the reasons set forth in the foregoing Memorandum, it is hereby **ORDERED** that:

1.    Remaining Defendants' motion to dismiss (Doc. 28) is **PARTIALLY GRANTED**.

2.    Plaintiff's claims of: (1) being denied access to the courts and (2) failure to be provided due process with respect to his segregated confinement placements are **DISMISSED** for failure to state a claim.

3.    The conditions of confinement and mail tampering claims against Remaining Defendants Northumberland County; County Commissioners Frank Sawicki, Vinny Clausi, and Kurt Masser; Controller Charles Erdman; Sheriff Chad Reiner; Warden Roy Johnson; Deputy Warden Wheary; Officers Heater and Bordner;

Lieutenants Keith Smink and Lieutenant Jim Smink; District

Attorney Anthony Rosini; and Judge Robert Sacavage will proceed.

BY THE COURT:

**s/James M. Munley**
**JUDGE JAMES M. MUNLEY**
**United States District Court**