## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAMES FREEMAN,** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | |
| v. | : | **CIVIL NO. 3:10-CV-2502** |
| | : | |
| **NORTHUMBERLAND COUNTY** | : | **(Judge Munley)** |
| et al., | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM

### Background

James Freeman ("Plaintiff"), an inmate presently confined at the State Correctional Institution, Frackville, Pennsylvania filed his *pro se* civil rights action pursuant to 42 U.S.C. § 1983.  This action centers on Plaintiff's prior temporary confinements in the Northumberland County, Pennsylvania Prison.

By Memorandum and Order dated March 5, 2012,  a motion to dismiss by Defendants  PrimeCare Medical, Inc. ("PrimeCare"), and three of its employees Vice President Francis J. Komykoski; Carolyn Hackenburg, L.P.N.; and Doctor Robert Hynick was granted.

Remaining Defendants are Northumberland County, and the following members of the County Prison Board: County Commissioners Frank Sawicki,

Vinny Clausi, and Kurt Massner; District Attorney Anthony Rosini; Controller

Charles Erdman; Judge Robert Sacavage; and Sheriff Chad Reiner.  Freeman is

also proceeding against the following Northumberland County Prison employees:

By Memorandum and Order dated March 20, 2012, a motion to dismiss by

the Remaining Defendants was partially granted.  See Doc. 53.   Specifically,

Plaintiff's claims of: (1)  being denied access to the courts and (2) failure to be

provided due process with respect to his segregated confinement placements were

dismissed.   However, the conditions of confinement and mail tampering claims

against the Remaining Defendants were allowed to proceed.

According to the Complaint, while confined for two weeks in the

Northumberland County prison during December, 2009, Freeman was housed in a

dirty, insect infested,[1] "extremely cold" cell, the walls of which had holes, orange

mold, and asbestos with no window or  hot water.  (Doc. 1, ¶ 2.)  The Plaintiff was

also purportedly given only one set of clothes,  placed in restraints during

recreation time, given a dirty, ripped mattress, and was denied commissary as well

as telephone privileges.

Plaintiff was returned to the Northumberland County Prison during June and

July, 2010, for approximately four (4)  weeks.  Freeman contends that during that

---

[1] Plaintiff's deposition testimony describes the insects as being ants, spiders, and bugs.  See Doc. 88-2 p. 11.

relatively brief period he was again subjected to the same adverse conditions described above except that "it was extremely hot" in the prison due to a lack of air conditioning.  (Id. at ¶ 3.)

Freeman states that he was sent back to the prison for a third time on August 8, 2010 and remained there until October, 2010.  Freeman again claims that he was housed in an  unsanitary cell during this period.  As a result of those conditions,  he allegedly "broke out in a rash, bumps and boils on my chest and back" and was exposed to prisoners with MRSA.[2]  (Id.  at ¶ 4.)   It is also alleged that Plaintiff suffered a loss of commissary privileges   Freeman was also placed in segregation for a five (5) day period during which he was purportedly placed on a food loaf diet, denied clothing, clean towels, bedding, showers, recreation, personal legal property, legal and regular mail, as well as being forced to sleep on a concrete slab with twenty-four (24) hour illumination.  (See id. at ¶ 8.)

The final claims asserted are that Plaintiff's outgoing regular and legal mail was read by prison officials; the prison is understaffed; infested with bird droppings; lacks fire protective measures such as sprinklers; sufficient dental

---

[2]  Methicillin Resistant Staphylococcus Aureus ("MRSA") is a common bacteria which is resistant to antibiotics and which can cause infections.  MRSA infections frequently occur in hospital settings, correctional settings and the community.

treatment is not afforded; he was sprayed with a chemical agent; and the prison has

an inadequate law library.  (See id. at ¶ 16.)  Plaintiff seeks nominal, compensatory

and punitive damages, as well as declaratory and injunctive relief.[3]

## **Discussion**

Remaining Defendants argue that they are entitled to entry of summary

judgment on the grounds that:  (1) there are no facts established which could

support a finding of municipal liability against Northumberland County and the

Prison Board Defendants; (2)  the purported allegations of inhumane conditions did

not violate the Eighth Amendment;  and (3) Plaintiff's contentions relating to mail

tampering are constitutionally insufficient.

## **Standard of Review**

Summary judgment is proper if "the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any

material fact and that the movant is entitled to a judgment as a matter of law."  Fed.

R. Civ. P. 56(c); See also Saldana v. Kmart Corp., 260 F.3d 228, 231-32 (3d Cir.

2001).  A factual dispute is "material" if it might affect the outcome of the suit

_____

[3] This Court's March 5, 2012 Memorandum and Order concluded that
Plaintiff's action to the extent that it seeks injunctive relief based upon actions which
occurred during his prior confinements at the Northumberland County Prison was
subject to dismissal on the basis of mootness.

under the applicable law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

(1986).  A factual dispute is "genuine" only if there is a sufficient evidentiary basis

that would allow a reasonable fact-finder to return a verdict for the non-moving

party.  Id. at 248.  The court must resolve all doubts as to the existence of a genuine

issue of material fact in favor of the non-moving party.  Saldana, 260 F.3d at 232;

see also Reeder v. Sybron Transition Corp., 142 F.R.D. 607, 609 (M.D. Pa. 1992).

Unsubstantiated arguments made in briefs are not considered evidence of asserted

facts.  Versarge v. Township of Clinton, 984 F.2d 1359, 1370 (3d Cir. 1993).

Once the moving party has shown that there is an absence of evidence to

support the claims of the non-moving party, the non-moving party may not simply

sit back and rest on the allegations in its complaint.  See Celotex Corp. v. Catrett,

477 U.S. 317, 324 (1986).  Instead, it must "go beyond the pleadings and by [its]

own affidavits, or by the depositions, answers to interrogatories, and admissions on

file, designate specific facts showing that there is a genuine issue for trial."  Id.

(internal quotations omitted); see also Saldana, 260 F.3d at 232 (citations omitted).

Summary judgment should be granted where a party "fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and

on which that party will bear the burden at trial."  Celotex, 477 U.S. at 322-23.

"'Such affirmative evidence – regardless of whether it is direct or circumstantial –

must amount to more than a scintilla, but may amount to less (in the evaluation of

the court) than a preponderance.'" Saldana, 260 F.3d at 232 (quoting Williams v.

Borough of West Chester, 891 F.2d 458, 460-61 (3d Cir. 1989)).

**Municipal Liability**

It is initially argued that Northumberland County and the members of the

County Prison Board (i.e., Commissioners Sawiciki, Clausi, Masser, D.A. Rossini,

Controller Erdman, Sheriff Reiner and Judge Sacavage) are entitled to entry of

summary judgment because Plaintiff has failed to allege facts which could support

a finding of municipal liability with respect to his surviving contentions. See Doc.

89, p. 13.

Remaining Defendants maintain that the County and Prison Board members

as a local government agency cannot be held liable under a theory of *respondeat*

*superior.* Based upon the undisputed record, they next argue that there is no

alleged constitutional misconduct by the County itself or stemming from the

execution of any governmental policy or custom. They point out that there is no

factual predicate that the conditions alleged by Plaintiff "existed on a systematic

basis" or were of the magnitude to establish an Eighth Amendment violation. Doc.

89, p. 15.

A plaintiff, in order to state an actionable civil rights claim, must plead two

essential elements:  (1) that the conduct complained of was committed by a person acting under color of law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. See Groman v. Township of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995); Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1141-42 (3d Cir. 1990).

 As previously discussed by this Court, a municipal body or other local governmental unit, not part of a state for Eleventh Amendment purposes, may be a "person" subject to suit under 42 U.S.C. § 1983.  Monell v. Department of Social Servs., 436 U.S. 658, 690-91 (1978)("Congress did intend municipalities and other local government units to be included among those persons to whom § 1983 applies.")  "Local governing bodies, like every other § 1983 'person,' by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels."  Id.  See also Board of County Comm'rs of Bryan County, OK v. Brown, 520 U.S. 398, 403-07 (1997); Roman v. Jeffes, 904 F.2d 192, 196-97 (3d Cir. 1990); Illiano v. Clay Township, 892 F. Supp. 117, 121 (E.D. Pa. 1995).

Federal civil rights claims brought under § 1983 cannot be premised on a theory of respondeat superior.  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.

1988).  Rather, each named defendant must be shown, via the complaint's

allegations, to have been personally involved in the events or occurrences which

underlie a claim.  See Rizzo v. Goode, 423 U.S. 362 (1976); Hampton v.

Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976).  As explained in Rode:

> A defendant in a civil rights action must have personal
> involvement in the alleged wrongs. . . .  [P]ersonal involvement
> can be shown through allegations of personal direction or of
> actual knowledge and acquiescence.  Allegations of participation
> or actual knowledge and acquiescence, however, must be made
> with appropriate particularity.

Rode, 845 F.2d at 1207.

It has also been repeatedly held that a local government unit may not be

subjected to § 1983 liability on a theory of *respondeat superior*.  Bryan County, 520

U.S. at 403; City of Canton v. Harris, 489 U.S. 378, 392 (1989); Pembaur v.

Cincinnati, 475 U.S. 469, 478-79 (1986); Monell, 436 U.S. at 691; Beck v. City of

Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996);).  Rather, "... a plaintiff seeking to

impose liability on a municipality under § 1983 [is required] to identify a municipal

'policy' or 'custom' that caused the plaintiff's injury."  Bryan County, 520 U.S. at

403; Beck, 89 F.3d at 971.

Based upon the standards announced in Rode and Bryan County this Court

agrees that Plaintiff cannot establish liability against any of the Remaining

Defendants solely premised upon their supervisory duties.

8

Second, the United States Court of Appeals for the Third Circuit has further explained that a municipality can be held liable under § 1983 "only when 'execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'" Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990) (citing Monell, 436 U.S. at 694).   Custom can be established by proof of knowledge and acquiescence.  Fletcher v. O'Donnell, 867 F. 2d 791, 793-4 (3d Cir. 1989).

In Bryan County, the United States Supreme Court elaborated on the showing required for municipal liability under § 1983, stating:

> . . . [I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged.  That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

Id. at 404; see Kneipp v. Tedder, 95 F.3d 1199, 1213 (3d Cir. 1996).

Plaintiff has stated that  a 2008 federal class action suit in this district, Collins v. Reish Civil No. 4:08-CV-345(Jones, J.) which was initiated on behalf of the Northumberland County Prison inmate population included claims similar to the

conditions of confinement allegations set forth in the pending Complaint.[4]   This

Court's review of the settlement agreement reached in that matter contains no

indication that the issue of mail tampering was addressed.

Despite the liberal standards applied to <u>pro se</u> submissions, an application of

the well settled summary judgment criteria to the mail tampering allegations set

forth in the Complaint  (Doc. 1, ¶ 15)  shows that there are no facts alleged which

could support a claim that the County or Prison Board was the moving force behind

the alleged mail tampering or that said the County and/or Prison Board members

established, had knowledge of, or acquiesced in the alleged practice of reading

outgoing regular and legal mail.  Accordingly, based upon an application of <u>Monell</u>

and  <u>Bryan County</u> the County and Prison Board members are entitled to entry of

summary judgment with respect to the allegations of mail tampering.

Freeman's contention that the <u>Collins</u> class action provided notice to the

County and Prison Board that inadequate conditions of his confinement existed

within the prison creates a disputed issue of material fact as to whether  the

inadequate conditions of confinement alleged by Plaintiff existed on a systematic

basis and whether there was a policy or custom which permitted the existence of

those purported unconstitutional conditions to continue.   Remaining Defendants

---

[4] Freeman's pending action regards conditions which existed as of 2009, after
the filing, but prior to settlement of the aforementioned class action suit.

incorporated argument (Doc. 89, p. 15) that the conditions alleged by Plaintiff did

not rise to the level of a constitutional violation will be addressed below.

### Conditions of Confinement

Remaining Defendants next contend that based upon the undisputed facts,

the totality of the temporary conditions of Freeman's temporary confinements

"were not sufficiently serious enough to rise to the level of a constitutional

violation." Doc. 89, p. 21.   They add that entry of summary judgment is appropriate

because Freeman has not produced evidence that he suffered any serious or

significant physical or emotional injury.  See id. at p. 17.

In support of their argument they note that the undisputed record shows that:

(1) Freeman received medical attention 43 times during his 108 day aggregate t

period of confinement in the Northumberland County Prison; (2) the prison's

heating and ventilation systems were regularly inspected and found to be in good

working order during the relevant time period; (3) Pennsylvania Department of

Corrections (DOC) inspection reports show that the prison was in substantial

compliance with state regulations and acted effectively sand in good faith to remedy

any problem areas; (4) Plaintiff did not contact any disease because the facility was

unsanitary or suffer any serious injury as a consequence of his incarceration; and (5)

Freeman received one hour of recreation at least five days per week.

The Eighth Amendment's prohibition of cruel and unusual punishment imposes duties on prison officials to provide prisoners with the basic necessities of life, such as food, clothing, shelter, sanitation, medical care and personal safety. See Farmer v. Brennan, 511 U.S. 825, 832 (1994); Helling v. McKinney, 509 U.S. 25, 31 (1993).  Prison conditions may amount to cruel and unusual punishment if they cause "unquestioned and serious deprivations of basic human needs . . . [that] deprive inmates of the minimal civilized measure of life's necessities."  Tillman v. Lebanon Cnty. Corr. Fac., 221 F.3d 410, 418 (3d Cir. 2000).

In reviewing conditions of confinement claims, courts have stressed that the duration of the complainant's exposure to the alleged unconstitutional conditions and the "totality of the circumstances" are critical to a finding of cruel and inhumane treatment.  Hinterlong v. Hill, 2006 WL 2303106 * 5-6  (E.D. Pa. August 8, 2006); Nami v. Fauver, 82 F.3d 63, 67 (3d Cir. 1996).  Moreover, the focus must be on the deprivation of a particular basic necessity.  As explained in Wilson v. Seiter:

> Some conditions of confinement may establish an Eighth Amendment violation "in combination" when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise – for example, a low cell temperature at night combined with a failure to issue blankets. To say that some prison conditions may interact in this fashion is a far cry from

> saying that all prison conditions are a seamless web for
> Eighth Amendment purposes. Nothing so amorphous as
> "overall conditions" can rise to the level of cruel and
> usual punishment when no specific deprivation of a single
> human need exists.

501 U.S. 294, 304-05 (1991).

In addition to showing conditions that pose a risk of serious harm, the inmate must show that the prison official responsible for the conditions of confinement acted with "a sufficiently culpable state of mind." Id. at 298. A prison official violates the Eighth Amendment when he acts with deliberate indifference to a known, objectively serious risk to a prisoner's health or safety. See Farmer, 511 U.S. at 837; Beers-Capitol v. Whetzel, 256 F.3d 120, 125 (3d Cir. 2001). This requirement of actual knowledge means that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

To establish an Eighth Amendment claim, Freeman must show that the conditions of his confinement pose "a substantial risk of serious harm" to his health or safety. Farmer, 511 U.S. at 834. There is no requirement that the Plaintiff show that he actually suffered serious injury. Accordingly, the motion for summary judgment to the extent that it seeks relief on the basis that Freeman has not produced evidence that he suffered any serious or significant physical or emotional

injury lacks merit

As previously discussed, the Complaint contends that Plaintiff was housed in a dirty, insect infested, "extremely cold" cell, the walls of which had holes, orange mold, and asbestos with no window or hot water. (Doc. 1, ¶ 2.)  In addition, he was purportedly given only one set of clothes, forced to wear restraints during recreation time, given a dirty, ripped mattress, and was denied commissary, and telephone privileges.  During subsequent periods of confinement the Plaintiff was also allegedly exposed to MRSA, and his cell was extremely hot during the summer months.[5]  Freeman further contends that during a five (5) day period of segregated confinement, he was denied commissary, clothing, clean towels, bedding, showers, recreation, subjected to 24 hour illumination and placed on a food loaf diet.

This matter regards three separate short term periods of incarceration. Specifically a two (2) week confinement in December 2009; a four (4) week imprisonment in June-July, 2010; and an approximately two (2) month period between August- October 2010 which included a five (5) day period of segregated confinement.

It is initially noted that denial of showers for a temporary period of time is not a constitutional violation.  See Briggs v. Heidlebaugh, 1997 WL 318081 *3

---

[5]     There is no claim by Plaintiff that he contracted MRSA.

(E.D. Pa. 1997)(denial of showers for two (2) weeks); <u>DiFilippo v. Vaughn</u>, 1996 WL 355336 at *5 (E.D. Pa. 1996)(cold showers for one month); <u>Veteto v. Miller</u>, 829 F. Supp. 1486, 1496 (M.D. Pa. 1992)(deprivation of showers during a brief period of placement in administrative detention found not to be Eighth Amendment violation).  Second, the denial of recreation for thirteen days has also been found to not amount to cruel and unusual punishment.  <u>Knight v. Armontrout</u>, 878 F.2d 1093, 1096 (8th Cir. 1989).    Short term placement in ambulatory restraints approximate to the pending factual circumstances does not rise to a constitutional violation.  <u>See</u> <u>Holley v. Johnson</u>, 2010 WL 2640328 (W.D. Va. June 30, 2010); <u>Barker v. Goodrich</u>, 2010 WL 55719 *5  (S.D. Ohio Jan. 4, 2010).

The use of mace-type sprays by correctional officials has been found to be constitutionally acceptable under certain circumstances.  <u>See</u> <u>Banks v. Mozingo</u>, 423 Fed. Appx. 123, 126  (3d Cir. 2011); <u>Travillion v. Leon</u>, 248 Fed. Appx. 3563 (3d Cir. 2007).   It has also been recognized that "continuous exposure to low wattage night time security lighting may be permissible based on legitimate security concerns." <u>Sims v. Piazza</u>, 2009 WL 3147800 *23  (M.D. Pa. Sept. 28, 2009)(Kosik, J.); <u>King v. Frank</u>, 371 F. Supp.2d 977, 984-85 (W.D. Wisc. 2005). Next, only a substantial deprivation of food to a prisoner sets forth a viable Eighth Amendment claim.  <u>Warren v. Irvin</u>, 985 F. Supp. 350 (W.D. N.Y. 1997); <u>Williams</u>

v. Berge, 2002 WL 32350026 *2 (W.D. Wis. 2002); Moss v. Ward, 450 F. Supp. 591, 596 (W.D. N.Y. 1978)(deprivation of one meal may not be cruel and unusual punishment).  Moreover, placing a prisoner on a food loaf diet for a limited period of time has likewise been found not to assert a viable Eighth Amendment violation. Lane v. Culp, 2007 WL 954101 *4 (W.D. Pa. March 28, 2007).

Likewise, the Third Circuit Court of Appeals has ruled that a loss of commissary privileges is not an atypical and significant hardship.  See Milton v. Ray, 301 Fed. Appx. 130, 133 (3d Cir. 2008); Wilkins v. Bittenbender, 2007 WL 708993 *2 (3d Cir. 2007).  It is also undisputed that Plaintiff received regular medical attention during the periods of incarceration at issue and there is no contention that he developed MRSA or any other serious medical or dental condition as a result of or during his Northumberland County Prison stays.   An undisputed sworn declaration by Deputy Warden Wheary states that inmates were provided with cleaning supplies on a weekly basis and more frequently upon request.  Furthermore, in his deposition testimony, Freeman acknowledges, that he was given meals; had access to running water; received medical treatment; was only sprayed with a chemical agent once (after he refused to leave his cell as directed); and was only shackled when outside of his cell during recreation.   See  Doc. 88-2. Freeman also testified that his biggest problem was the "cleanliness of the facility."

Doc. 88-2, p. 11.

Courts have stressed that the duration of the complainant's exposure to the alleged unconstitutional conditions and the "totality of the circumstances" are critical to a finding of cruel and inhumane treatment.  Given the admittedly short length of each of the challenged periods of confinement, Freeman's own deposition testimony,  and an application of the above standards, the totality of the circumstances of the alleged conditions simply does not implicate the level of a serious deprivation of basis human needs required to set forth an actionable constitutional claim.  The request for summary judgment will be granted.

**Mail**

The final argument raised by Remaining Defendants is that Plaintiff's allegations relating to the  opening of his incoming mail does not state a constitutional violation of  his right of freedom of expression.  <u>See</u> Doc. 89, p. 29. . Likewise, they claim that Plaintiff's contention that his outgoing mail was read by correctional staff before being mailed is also insufficient.[6]

As previously discussed by this Court's March 20, 2012 Memorandum and Order,   <u>Jones v. Brown</u>, 461 F.3d 353, 359 (3d Cir. 2006),  reiterated that prisoners have a First Amendment right with respect to their legal mail and that "a state

_____

[6] This Court's March 20, 2012 Memorandum and Order has already concluded that a viable claim of denial of access to the court has not been stated.

pattern and practice, or . . . explicit policy of opening legal mail outside the presence of the addressee inmate interferes with protected communications . . . and accordingly impinges upon the inmate's right to freedom of speech." The Court added that a prisoner litigant pursuing such a claim is not required to allege actual injury.[7] See id.

Similarly, interference with inmate non-legal mail may also amount to a denial of free speech under the First and Fourteenth Amendments. Taylor v. Oney, 196 Fed. Appx. 126, 128 (3d Cir. 2006)( the opening of incoming legal mail outside of a prisoner's presence impinges upon the inmate's First Amendment rights.) The Court of Appeals for the Third Circuit in Hamm v. Rendell, 166 Fed. Appx. 599, 603 (3d Cir. 2006), stated that when district courts address claims of improper mail inspections and intrusive mail regulations or any actions involving outgoing inmate mail, the test developed by the Supreme Court in Procunier v. Martinez, 416 U.S. 396, 412 (1974), should be employed.

Specifically, courts should inquire as to whether the prison restriction or conduct relating to outgoing inmate mail furthered an important or substantial government interest unrelated to the suppression of expression, and whether the conduct was intrusive only to the degree necessary to protect that interest. Id.; see

---

[7] Plaintiff's deposition testimony indicates that one piece of incoming legal mail was opened. See Doc. 88-2, p. 12.

also, <u>Nasir v. Morgan</u>, 350 F.3d 366, 371-74 (3d Cir. 2003)(<u>Procunier</u> should be applied to outgoing prisoner correspondence issues).

In light of the failure of Remaining Defendants' summary judgment motion to undertake an analysis under <u>Procunier</u>, a determination as to whether the alleged reading of Plaintiff's mail was reasonably related to a legitimate penological interest of institutional security is not possible. <u>See</u> <u>Caldwell v. Beard</u>, 305 Fed. Appx. 1, 2 (3d Cir. 2008). Therefore, the request for summary judgment will be denied with respect to the mail tampering claims against Defendants Johnson, Wheary, Keith Smink, Heater, Bordner, and J. Smink.[8]


**<u>Conclusion</u>**

As the result of prior rulings by this Court the only surviving claims are that Plaintiff Freeman was subjected to mail tampering and unconstitutional conditions of confinement. Withe respect to those claims, Remaining Defendants have filed a motion for summary judgment which will be granted in part.

Specifically, any claims against the Remaining Defendants solely based

---

[8] This Court has already concluded that there are no facts alleged which could support a claim that the County or Prison Board was the moving force behind the alleged mail tampering or that said the County and/or Prison Board members had knowledge of or acquiesced in the alleged practice of reading outgoing regular and legal mail.

upon their supervisory duties are insufficient and cannot proceed.  Second, since

there are no facts alleged which could support a claim that the County or Prison

Board was the moving force behind the alleged mail tampering, Defendants

Northumberland County and the Prison Board members are entitled to entry of

summary judgment with respect to all allegations of mail tampering.

Third, since the totality of the circumstances relating to the Plaintiff's alleged

conditions simply does not implicate the level of a serious deprivation of basic

human needs required to set forth an actionable constitutional claim, summary

judgment will be granted in favor of all Remaining Defendants with respect to all

conditions of confinement claims raised by Freeman.

Based upon those determinations, summary judgment will be granted in favor

of Defendants Northumberland County, and the following members of the County

Prison Board: County Commissioners Frank Sawicki, Vinny Clausi, and Kurt

Massner; District Attorney Anthony Rosini; Controller Charles Erdman; Judge

Robert Sacavage; and Sheriff Chad Reiner.

However, the request for summary judgment will be denied with respect to

the mail tampering claims against the following Defendants, who are all  employees

of the Northumberland County Prison:  Warden Roy Johnson; Deputy Warden

Wheary; Correctional Officers Heater and Bordner; Lieutenants Keith Smink and J.

Smink.  The remaining parties will be granted  a final opportunity until October 31,

2014, in which to submit any dispositive motions addressing the remaining mail

tampering claims.  An appropriate Order will enter.


**BY THE COURT:**


<u>**s/James M. Munley**</u>
**JUDGE JAMES M. MUNLEY**
**United States District Court**


**DATED: SEPTEMBER 10 , 2014**